# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HAROLD VIA,**

       Petitioner,

v.                                                                    **Civil Action No. 2:10cv101**
                                                                       **(Judge Bailey)**

**TAMARA S. LYN,[1] Acting Warden,**

       Respondent.

## OPINION/REPORT AND RECOMMENDATION ON THE RESPONDENT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PETITIONER'S MOTION FOR INJUNCTIVE RELIEF

### I. Procedural History

The petitioner initiated this § 2241 habeas corpus action on August 27, 2010 [Dckt. 1]. In the petition, the petitioner challenges the Bureau of Prisons decision to expel him from the Residential Drug Abuse Program ("RDAP). Accompanying his petition was a Motion for Temporary Restraining Order [Dckt. 2].

After receipt of the required filing fee, the Court issued an Order directing the respondent to show cause why the petition should not be granted [Dckt. 15]. The respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment, and supporting memorandum, on November 22, 2010 [Dckt. 21 & 22].

Because the petitioner is proceeding without counsel, on November 29, 2010, the Court issued a Roseboro Notice advising the petitioner of his right to respond to the respondent's motion

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Tamara Lyn is substituted for Joel Ziegler as the proper party respondent in this case.

[Dckt. 26]. After granting the petitioner an extension of time, he filed his response to the respondent's motion on January 13, 2011 [Dckt. 33]. This case is now before the undersigned for a report and recommendation.

## II. Contentions of the Parties

### A. The Petition and Motion for Injunctive Relief

In the petition, the petitioner asserts that he was wrongly expelled for the RDAP and asks to be restored to his treatment class. Petition at 1. In support of his petition, the petitioner asserts that his dismissal from the RDAP program was wrong for three reasons: (1) it violated his due process rights; (2) it violated his contractual rights; and (3) it violated his right to equal protection. *Id.* at 4.

In his memorandum and motion for injunctive relief, the petitioner explains that he was admitted to the RDAP upon the recommendation of the sentencing court, and after approval by the Warden and the Program Coordinator. [Dckt. 2 at 1-2.] The petitioner alleges that by May 31, 2010, he had progressed through the program in a satisfactory manner. *Id.* at 2.

On June 29, 2010, the Warden posted an official memorandum stating that the commissary would be open on July 4, 2010, for the purpose of allowing inmates to purchase ice cream for the holiday. *Id.* However, the memorandum specified that inmates would be allowed to purchase no more than two pints. *Id.*

The petitioner went to the commissary on July 4th. *Id.* At that time, he noticed a piece of paper posted thereabouts which stated that inmates were limited to the purchase of one pint of ice cream. *Id.* The notice was visibly placed and written with a magic marker, but was unsigned. *Id.* When the petitioner purchased his one pint of ice cream, he asked the correctional officer present why he was limited to only one pint of ice cream, when the Warden's memorandum had originally

2

allowed for two pints. *Id.* The correctional officer allegedly told the petitioner that the one pint limitation was in place to assure that each inmate could obtain at least one pint of ice cream. *Id.*

On that date, the petitioner notes that the commissary was open from 14:00 to 18:00 hours. *Id.* Thus, he waited until approximately 17:45 hours before returning, to ensure that every inmate who wanted a pint of ice cream had the opportunity to purchase one. *Id.* at 2-3. At that time, the petitioner attempted to purchase a second pint of ice cream in reliance on the Warden's original memorandum. *Id.* at 3. However, the petitioner's identification card was confiscated and he was directed to a Lieutenant's office. *Id.*

According to the petitioner, as part of the RDAP, inmates are required to take responsibility for their actions. *Id.* Therefore, the next day in class, he "brought himself up," divulging to the class the events that had transpired the previous day. *Id.* The petitioner asserts that the issue divided the class and as a result, he was taken to the program coordinator, Dr. Williams. *Id.* The petitioner showed Dr. Williams the Warden's memo and explained his actions. *Id.* Dr. Williams felt that the petitioner was making excuses for incorrect behavior, issued him a warning, and expelled him from the RDAP. *Id.* Dr. Williams reasons for expelling the petitioner from the program were "super optimism, entitlement and mollification." *Id.*

Nonetheless, the petitioner asserts that his termination from the program was not appropriate. *Id.* More specifically, he asserts that he was meeting the program goals, that he did not act illicitly to purchase ice cream because he acted in reliance upon the Warden's memorandum, and that he was making satisfactory progress in the program. *Id.* at 3-4.

Next, the petitioner asserts that an inmate may be removed from the RDAP for only two specific reasons: (1) disruptive behavior; and (2) behavior that is of such magnitude that the inmate's

presence would create an immediate and on going problem for staff and the other inmates. *Id.* at 5 (citing 28 C.F.R. § 550.53 and BOP Program Statement ("PS") 5330.11). He further asserts that he did none of these things and that he received only positive behavior reports. *Id.* at 5. Thus, he asserts that he was wrongly, and without warning, expelled from his RDAP class. *Id.*

Next, the petitioner contends that before he entered into the RDAP he signed a contract with the BOP which obligated him to certain standards of behavior. *Id.* The petitioner asserts that because both parties entered the contract willingly and in good faith, he is entitled to specific performance of the contract. *Id.*

Furthermore, he asserts that Dr. Williams acted in an arbitrary and capricious manner when he disregarded the petitioner's rights and expelled him from the program. *Id.* at 6. The petitioner specifically alleges that Dr. Williams did not allow him the opportunity to defend himself, nor take into consideration the reasons for the petitioner's actions, i.e., his reliance on the Warden's memorandum. *Id.* For these reasons, the petitioner asserts that his due process rights were violated. *Id.*

As relief, the petitioner requests the Court order the BOP to restore him to his RDAP class and to restrain the BOP from any further interference with regard to his participation in the program. *Id.* at 6-8.

B.  **The Respondent's Motion to Dismiss or For Summary Judgment**

In her motion and supporting memorandum, the respondent asserts that the petitioner is not entitled to relief on his claim and that the petition should be dismissed with prejudice [Dckt. 21]. Specifically, the respondent asserts the following:

(1) the petitioner was properly expelled from the RDAP;

(2) the petitioner has no protected liberty interest in RDAP participation;

(3) the BOP's decision was based on a reasonable interpretation of 18 U.S.C. § 3621; and

(4) the petitioner failed to exhaust administrative remedies.

Dckt. 22 at 11-22.

In support of these contentions, the respondent asserts that the petitioner was designated to FCI-Morgantown on October 6, 2009, and was enrolled in the RDAP on October 26, 2009. *Id.* at 2. Prior to enrolling in the program, the petitioner was required to sign an agreement in which he acknowledged his responsibilities under the program. *Id.*

On January 13, 2010, it was noted by a drug treatment specialist that the petitioner had demonstrated little effort in the RDAP. *Id.* Similarly, on March 14, 2010, it was noted that the petitioner's progress in the program was only "marginal." *Id.* at 3.

On March 23, 2010, the petitioner was cited for confronting or attempting to intimidate a fellow RDAP resident. *Id.* On March 31, 2010, he received an official written warning about that behavior. *Id.* The written warning specifically advised the petitioner that he was not making appropriate progress in the program and that his violation of the program rules was counter to the program's objectives. *Id.* For this reason, the petitioner was warned that he would be expelled from the program if he received a second warning. *Id.*

On April 8, 2010, the plaintiff received another program assessment wherein the drug treatment specialist again found his progress to be only marginal. *Id.*

On July 4, 2010, Stacy Riffle ("Riffle") came to FCI-Morgantown for the purpose of conducting ice cream sales in celebration of the July 4th holiday. *Id.* The respondent concedes that originally, a memorandum was released stating that each inmate would be able to purchase two pints

of ice cream. *Id.* However, when full shipment of the ice cream was not received, Riffle posted a sign outside the commissary notifying inmates that due to a shortage, they would only be able to purchase one pint of ice cream. *Id.*

According to the sales receipts for July 4th, 643 pints of ice cream were sold to the inmates. *Id.* at 4. Out of those 643 inmates, only two, including the petitioner, attempted to buy more than one pint. *Id.* When confronted by staff, the petitioner stated that he waited until the end of the line to make sure there was enough ice cream for everyone before trying to purchase a second pint. *Id.* Moreover, he conceded that he had seen the posted memo which stated purchases were limited to one pint per inmate. *Id.* The petitioner, however, continued to focus on the Warden's memorandum, rather than the posted signs, and was unwilling to accept responsibility for his actions. *Id.* Accordingly, his behavior was reported to Dr. Williams. *Id.*

On July 8, 2010, Dr. Williams expelled the petitioner from the RDAP after discussing with him the reasons for his expulsion. *Id.* Specifically, Dr. Williams informed the petitioner that because he had received a second warning, he was being expelled from the program. *Id.* Nonetheless, Dr. Williams advised the petitioner that there were other non-residential drug services available, encouraged him to apply for those programs, and instructed him on how to request those services. *Id.* at 5.

Dr. Williams responded to the petitioner's informal remedy request on July 26, 2010, and advised him again as to the reasons for his expulsion from the program. *Id.* The petitioner filed his institutional remedy on August 11, 2010. *Id.* That remedy was denied on August 18, 2010. *Id.* The petitioner appealed that decision to the regional office on September 15, 2010. *Id.* at 6. Because that remedy was untimely received, it was rejected. *Id.* Although the petitioner was advised that he could

resubmit the remedy with an explanation for its untimeliness, he did not do so. *Id.*

C. **The Petitioner's Response**

In his response, the petitioner asserts that he was expelled from the RDAP for seeking to buy a pint of ice cream. [Dckt. 33 at 2.] Moreover, he asserts that because he had a liberty interest in his participation in the program once admitted, he is entitled to protection from arbitrary government decisions. *Id.* Because he contends the decision to expel him was arbitrary and capricious, the petitioner asserts that his due process rights were violated. *Id.* at 2-3.

Primarily, the petitioner challenges the manner and basis for his expulsion. *Id.* at 3. In addition, he alleges that he was injured by the loss of his opportunity to earn a one-year sentence reduction. *Id.* He believes that the decision to expel him for simply seeking to buy a pint of ice cream reflects an egregious abuse of power which is the very definition of an arbitrary and capricious act, compelling judicial scrutiny and requiring the reversal of the BOP's decision. *Id.* at 4.

As to exhaustion, the petitioner concedes that he did not fully complete the administrative remedy program with regard to this claim. *Id.* at 5. He further asserts, however, that exhaustion in this case is futile and that it should be waived. *Id.*

### III. Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a

7

substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

The BOP has promulgated regulations at 28 C.F.R. § 550.53 to implement the statutory requirement. According to the regulations, in order to be considered eligible for the residential drug abuse program, the inmate must have a verifiable documented drug abuse problem, must sign an agreement acknowledging program responsibility and be able to complete all three components of the program. 28 C.F.R. § 550.53(b). Participation in the program is voluntary and decisions on placement are made by the drug abuse treatment coordinator. 28 C.F.R. §§ 550.53(c) and (e).

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Thus, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Therefore, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

9

to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

V. Analysis

A. **Exhaustion**

In her response to the petition, the respondent argues that under the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional

10

facility until such administrative remedies as are available are exhausted." See Dckt. 22 at 19 (quoting 42 U.S.C. § 1997(e)). She then cites several cases in which the Supreme Court and the Fourth Circuit Court of Appeals have held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. *Id.* at 19-20 (citing Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001); Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674 (4th Cir. 2005)).

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, see Asare v. U.S. Parole Comm., 2 F.3d 540, 544 (4th Cir. 1993), the respondent's argument misses the mark. Although the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, they are not applicable in habeas proceedings under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[2]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Exhaustion prerequisites in habeas corpus actions arising

---

[2]In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 Wl 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. *Id.* Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. *Id.* The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. *Id.* (listing cases). The undersigned agrees with this reasoning and believes that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that the petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, this case has been served, a response has been filed, and the matter is ripe for review. Moreover, it is unlikely at this stage that the petitioner would have time to fully pursue his administrative remedies and still have adequate time to gain any meaningful review by the Court. Therefore, the interests of justice weigh in favor of waiving the exhaustion requirement in this case and the undersigned recommends doing so.

**B.  18 U.S.C. § 3625**

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999). Pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997).

Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under this

subchapter."[3] Accordingly, this Court has consistently held that any substantive decision by the BOP to grant or deny an inmate's admittance into the RDAP, or regarding his eligibility to receive a one-year sentence reduction, is not reviewable by the Court. See, e.g., Warman v. Phillips, 2009 WL 2705833, Civ. No. 1:08cv217 (N.D.W.Va. Aug. 25, 2009); Reitter v. Phillips, 2008 WL 2001268, Civ. No. 3:07cv115 (N.D.W.Va. May 6, 2008). Likewise, the decision whether an inmate should remain in the RDAP program, once admitted, is also a substantive decision, and not reviewable by the Court. See Ayala v. Phillips, Civ. No. 5:07cv45 (N.D.W.Va. Feb. 19, 2008) ("Just as a decision to admit an inmate in a residential drug treatment program is a judicially unreviewable substantive decision by the BOP, so too is a decision to remove an inmate from such a program once placed there."); see also Stadtmauer v. Lyn, Civ. No. 2:10cv114 (N.D.W.Va. Jan. 11, 2011) (same).

However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F.Supp. at 489. The first question is whether any cognizable constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988). The second question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284, 295 (1996). Additionally, "even where action is committed to absolute agency discretion by law," a Court may "review allegations that an agency exceeded its legal authority . . . or failed to follow its own regulations." Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981) ("Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated

---

[3]Pursuant to 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

13

constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself.").

1. Constitutional Claim

    a. Due Process

The petitioner asserts that the BOP's decision to expel him from the RDAP violates his right to due process because he has a protected liberty interest in early release through successful completion of the RDAP. [Dckt. 33 at 3.] This claim is without merit.

It is well established that in order to demonstrate a due process violation, a petitioner must show that he was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right in being released before the completion of a valid sentence. *Id.*; see also Sandin v. Conner, 515 U.S. 472, 484 (1995). In fact, directly on point with this case, several courts, including this one, have found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997). Thus, the petitioner has no liberty interest in RDAP participation and his due process claim fails.

    b. Equal Protection

The petitioner asserts that the BOP's decision to expel him from the RDAP violates his right to equal protection of the law. [Dckt. 1 at 4.] This claim is without merit.

The equal protection clause provides that no person shall be denied equal protection under

the laws. Therefore, to be successful on an equal protection claim, the petitioner must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, the petitioner fails to assert that any similarly situated persons were treated differently than him, or that the alleged unequal treatment was the result of intentional or purposeful discrimination. Accordingly, he has failed to show that his rights under the equal protection clause have been violated.

    3.    Arbitrary and Capricious Decision

In his response to the respondent's motion, the petitioner contends that he was expelled from the RDAP without warning, and for merely attempting to buy a pint of ice cream. [Dckt. 33 at 4.] He contends that such action is the very definition of an arbitrary and capricious decision. *Id.* However, the premise for the petitioner's argument is flawed, and nevertheless, lacks merit.

The petitioner was not expelled from the RDAP for simply attempting to buy a pint of ice cream. While that action is related to his expulsion, the petitioner was actually expelled from the RDAP for receiving a second written warning, for failing to meet the program's objectives, and for failing to satisfactorily progress in the program. See [Dckt. 23-2], Resp't Ex. 1, Declaration of Richard Williams, Psy.D. ("Williams Declaration). Moreover, when he received his first official written warning on March 31, 2010, the petitioner was warned that he was not satisfactorily progressing in treatment, that he was failing to achieve the goals of the program, and that the receipt of a second warning would result in his dismissal from the program. *Id.* at ¶ 11. Thus, the petitioner had ample warning that he was not meeting the expectations of the program and that he would be

expelled from the program if he received a second written warning. There is nothing arbitrary or capricious about the decision to expel him, and the petitioner did not lack appropriate notice.

**C. Contractual Claims**

Lastly, the petitioner claims that he signed a contract with the BOP for participation in the RDAP and that he is entitled to specific performance of that contract. [Dckt. 2 at 5-6.]

What the petitioner calls a contract is merely a Notice of RDAP Qualification and an Agreement to Participate in a Bureau of Prisons Residential Drug Abuse Treatment Program, see Dckt. 23-5, Resp't Ex. 1 at Att D, neither of which demonstrates that a contractual relationship existed. See Royal v. Trombone, 141 F.3d 596 (5th Cir. 1998).

In Royal, the Fifth Circuit found that even assuming a contractual claim was cognizable under § 2241, (the Court expressed its doubts that it was), the breach of contract claim was without merit. *Id.* at 603. Specifically, the Court held that the petitioner could not provide any documents establishing that a contractual relationship existed and therefore the breach of contract claim must fail. *Id* at 604. In this case, the petitioner asserts that his Notice of RDAP Qualification and Agreement to Participate in a Bureau of Prisons Residential Drug Abuse Treatment Program establish that a contractual relationship existed.

However, a review of those documents shows that neither is an agreement which creates obligations enforceable by law. The Notice of RDAP Qualification merely states that the petitioner qualifies for admittance into the RDAP program, and in fact, the petitioner was admitted into the program. [Resp't Ex. 1 at Att. D.] Therefore, even assuming there was a contractual relationship, the terms of that agreement were upheld. Likewise, the agreement to participate in the program merely sets forth that the participant understands that he is responsible for abiding by the specific conditions

of the program, as well as the relevant BOP policies. *Id.*; see also, Dckt. 22 at 16. It does not obligate the BOP to retain an inmate in the program once accepted. Even if it did, the agreement specifically notes that the participant may be expelled from the program for failing to "follow Bureau policies, rules and regulations [and] . . . the expectations, rules and regulations of the RDAP." [Resp't Ex. 1 at Att. D.] Because the petitioner failed to meet these terms, the BOP was well within its discretion to expel the petitioner from the program.

## VI. Petitioner's Motion for Injunctive Relief

To qualify for injunctive relief in this Court the petitioner must establish that (1) he is likely to succeed on the merits, (2) he will likely suffer irreparable harm if an injunction does not issue, (3) the balance of equity tips in his favor, and (4) an injunction is in the public interest. Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342 (4th Cir. 2009). Here, the petitioner cannot succeed on the merits of his claim. Thus, injunctive relief is not appropriate and his motion should be denied.

## VII. Recommendation

For the reasons stated, the undersigned recommends:

(1) the respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [Dckt. 21] be **GRANTED in part** and **DENIED in part**;

(2) the petitioner's motion for injunctive relief [Dckt. 2] be **DENIED**; and

(3) the petitioner's § 2241 petition [Dckt. 1] be **DENIED** with prejudice and **STRICKEN** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: January 21, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE